## Adkins, et al. v. Ratcliff.

(Decided November 30, 1926.)

### Appeal from Boyd Circuit Court.

Deeds—Aged Wife's Deed, Shortly After Husband's Death, Transferring to Sons Entire Interest in Land Acquired by Her and Husband, Held Properly Canceled for Fraud.—Deed, made without consideration shortly after husband's death, by wife 67 years old, transferring to sons all her interest, both in own right and as surviving widow, to land acquired by her and husband, held properly canceled as induced by fraud.

WAUGH & HOWERTON and J. F. STEWART for appellants.

COLDIRON & HARRIS for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Affirming.

This equitable action was instituted by appellee against appellants to cancel a deed which she had exe-

cuted and delivered to them on March 14, 1923, on the ground that it had been procured by fraud. Issue was duly joined, and, upon the hearing below, the chancellor adjudged appellee the relief sought. Hence the appeal.

Appellee is the surviving widow of Augustus Ratcliff, who died March 3, 1923. At the time of his death he was the sole owner in fee-simple title of two tracts of farm land in Boyd county, Kentucky, known as lots No. 21 and 22, in the Means & Russell Iron Company's Bellefonte Furnace Lands, containing about 101 acres. He and appellee owned jointly lot No. 34 of the same lands containing 22-89/100 acres, and lot No. 23 in block No. 8 of East Oakview, a suburb of Ashland. They made their home on the latter tract of land. By the deed sought to be cancelled, which was executed ten or eleven days after the death of her husband, appellee had conveyed all of her right, title and interest in and to all of this land, both in her own right and as surviving widow of her husband, to three of her sons, who are appellants herein. It appears that appellee is 67 years of age. She and her husband were married January 7, 1873. At that time he owned the clothing that he wore and $5.00 in money. Shortly after they were married Mrs. Ratcliff inherited from her father about $350.00. It was invested in 50 acres of land in Elliott county, the title being taken in her husband. By the fruits of their lives of industry and economy they subsequently were able to purchase additional lands in Elliott county, title of which was taken in him. Subsequently the Elliott county lands were sold and the Boyd county farm lands which he owned when he died were purchased. The title of all of it, including the 22 acre tract, was taken in Mr. Ratcliff. Some years before his death, however, they conveyed the 22 acre tract to another and subsequently repurchased it, the title then being taken jointly in Mr. and Mrs. Ratcliff. The house and lot in Ashland where they lived when he died was purchased in 1922 and was paid for largely, if not wholly, with money received by Mrs. Ratcliff on a policy of insurance for $10,000.00 taken in her favor by one of their sons who was killed in action during the World War. The title was taken jointly in them. For the last five years of his life Mr. Ratcliff was unable because of physical infirmity to engage in labor, and the last three or four years was an invalid, requiring much care and attention, and his wife lovingly and tenderly rendered

that service to him. None of their children lived with them, and some of them at such a distance that their visits were infrequent. None of them appears to have shared the burden of caring for their father. Three days before his death, at the instance of the three sons, a will was prepared for him by which he devised his real estate to them. All parties seem agreed that at the time he did not have mental capacity to make a will. The scrivener frankly so testified. He did not then seem to know either his property or his children, and had to be reminded that he had made no provision whatever for his wife. After his death, upon learning the contents of the will, his daughters, who had been disinherited, gave notice of their dissatisfaction and intention to contest the probate of the will. The deed which appellee signed and which by this proceeding she sought to cancel, so far as it conveyed her interest either in her own right or as the surviving widow of her husband to her three sons, appears to have grown out of the controversy between the sons and daughters with respect to a settlement of their father's estate. It was prepared in an attorney's office after an all day's session had by the children, at which their mother does not appear to have been present, and was signed by her and them at nine or ten o'clock at night, she having been sent for shortly before that time. By the terms of the deed, in accordance with the settlement made between the children, the four daughters were paid $650.00 each for their interest in the real estate left by their father, in consideration of which they conveyed the same to the three sons; and appellee for no consideration that we have been able to discover conveyed to the three sons all of her interest as the surviving widow of her husband in all of the real estate owned by him at the time he died, and also the undivided half interest which she owned in her own right in the house and lot in Ashland and in the 22 acre tract of land, but was graciously allowed an estate for life in the house and lot in Ashland, which she had paid for and absolute title to one-half of which she held. She testified that the deed was not read to her and that she did not understand its contents, and that when she signed it she was laboring under the mental strain incident to the last illness and death of her husband, which had been aggravated by the controversy and bickering of their children over his estate. She testified also that she was told by one of her sons

that to sign the paper they had prepared was the only way to keep down trouble and a lawsuit over her husband's estate; and that, although she finally signed, she stated that she could not do so "with a free good will." Some of her daughters corroborate her as to what occurred at the time she signed the deed in question. The three sons and the attorney who prepared the deed and who was present when she signed it testified that she understood the transaction fully and signed it with full knowledge of its contents and the consequences of so doing. The attorney, however, corroborated her to the extent that he says she stated that she could not sign it "with a free good will."

Under these facts it is insisted that we must conclude that the chancellor erred in adjudging a cancellation of the deed in question. The court is unable to bring itself around to that way of thinking. A more unconscionable case of an aged, trusting parent being overreached at a time when most susceptible by avaricious children would be difficult to imagine. The chancellor correctly concluded that the deed should be cancelled, and the judgment will be affirmed.

Judgment affirmed.